UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

LATASHA WILLIAMS,

                              Plaintiff,

    -against-

THE CITY OF NEW YORK, a municipal corporation;
and POLICE OFFICER ANDREW SRIKEN (SHIELD
NO. 10698) in his individual and official capacities,

                               Defendants.
-------------------------------------------------------------------------X

**COMPLAINT**

JURY TRIAL DEMANDED

15-CV-00066

      Plaintiff, LATASHA WILLIAMS, by her attorney, Steven E. Lynch, alleges for her complaint against the defendants as follows:

### **PRELIMINARY STATEMENT**

      1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights guaranteed by the Constitution of the United States.

### **JURISDICTION**

      2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

      3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

### **VENUE**

      4.     Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

**JURY DEMAND**

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

6. The plaintiff is an African-American female and was at all relevant times a citizen of the City and State of New York.

7. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9. At all times hereinafter mentioned, the individually named defendant, Police Officer Andrew Sriken was a duly sworn police officer of said department and was acting under the supervision of said department and according to their official duties.

10. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said

defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13. On April 23, 2012, at approximately 8:59 p.m., plaintiff encountered a street fight involving multiple people on Putnam Avenue between Marcus Garvey Boulevard and Lewis Avenue in Brooklyn, New York.

14. During the fight, someone dropped a gun.

15. Plaintiff picked up the gun to prevent a shooting.

16. Plaintiff walked away from the street fight and looked for a police officer.

17. Shortly thereafter, plaintiff looked behind her and saw a Police Officer Andrew Sriken running after her.

18. Plaintiff briefly ran from the Police Officer Andrew Sriken, but plaintiff stopped running, dropped to plaintiff's knees, and put plaintiff's hands up in the air.

19. Police Officer Andrew Sriken handcuffed plaintiff's hands behind her back, slammed plaintiff's face on the ground, kneed plaintiff in the back, and told plaintiff "this is what you get for running."

20. As a result of Police Officer Andrew Sriken's above-mentioned actions, the plaintiff suffered a broken tooth, pain to her back, cuts and bruising to her face and head.

21. Plaintiff received medical treatment on multiple occasions for the injuries suffered from Police Officer Andrew Sriken's actions.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983 - Fourth Amendment Violation for Excessive Force
(Against the Individual Officer Defendants)

22. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

23. While in the course of his duties and while acting under color of law, Police Officer Andrew Sriken effected a seizure and arrest of plaintiff by intentionally using excessive physical force against plaintiff, including, but not limited to, slamming plaintiff's face against the ground and kneeing plaintiff in plaintiff's back.

24. The physical attacks of the individual officer defendant on plaintiff were objectively unreasonable.

25. The individual officer defendant's use of excessive physical force caused injuries to the plaintiff, including but not limited to, a broken tooth, pain to her back, and cuts and bruising to her face and head.

26. By virtue of the foregoing, Police Officer Andrew Sriken deprived the plaintiff of her Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of her person and is liable to plaintiff under 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION
Municipal Liability
(Against Defendant City)

27. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

28. The City of New York and the New York City Police Department fail to scrutinize and hold accountable police officers who violate civil rights.

29. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New

York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1] The City of New York has paid at least $80 million for torts against the New York City Police Department since the fiscal year of 2008, peaking in fiscal year of 2009 when it paid out more than $117 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3]

30.     The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

31.     The City of New York has isolated NYPD officers like Police Officer Andrew Sriken from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers.  Civil rights lawsuits against police

---

[1]  Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on November 7, 2014.

[2]  Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on November 7, 2014.

[3] "Report: Number Of Lawsuits Against NYPD Hits Record High," http://newyork.cbslocal.com/2014/02/16/report-number-of-lawsuits-against-nypd-hits-record-high/, February 16, 2014 last visited on November 7, 2014.

officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.  In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[4]  This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

32. The 81st precinct of the New York City Police Department has an extensive history of civil rights violations.  According to the City Comptroller's Office fiscal year report for 2009, 39 Civilian Complaint Review Board complaints originated in the 81st precinct.[5]  In addition to prior lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers from the 81st precinct unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

33. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

---

[4] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on November 7, 2014.

[5] "CCRB: Attribution of Complaints to Patrol Borough Brooklyn North 2005-2009," https://data.cityofnewyork.us/Public-Safety/CCRB-Attribution-of-Complaints-to-Patrol-Borough-B/zwt9-6u9n, lasted visited on November 7, 2014.

34. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

35. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

36. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

37. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

38. As a result of the foregoing, plaintiff Latasha Williams is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

    d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
       January 7, 2015

By: _____/s/_____
Steven E. Lynch
Attorney for Plaintiff
The Law Offices of Steven E. Lynch
233 Fifth Avenue, Suite 4A
New York, New York 10016
(T) (718) 858-8737
(F) (718) 690-3593
steven@stevenelynch.com